**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HERMAIN LOPEZ PEREZ | : | |
| APELLANT | : | |
| | : | No. 2759 EDA 2018 |

Appeal from the Judgment of Sentence Entered August 24, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0003570-2017

BEFORE:   BENDER, P.J.E., MURRAY, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:                **FILED AUGUST 26, 2019**

Hermain Lopez Perez (Appellant) appeals from the judgment of sentence entered after a jury convicted him of indecent assault[1] and related offenses committed against his girlfriend's daughters, I.M. and M.C.   Appellant challenges the sufficiency of evidence and the trial court's denial of his motion to sever charges.  Upon review, we affirm.

In October 2017, Appellant lived with his girlfriend (Mother), and her five children, including two daughters I.M. (14 years old) and M.C. (7 years

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3126(a)(7) (complainant less than 13 years of age), (8) (complainant less than 16).

old), and a son, A.C. (13 years old). Appellant and Mother also had a 3 year old child together. I.M. and A.C. have autism. A.C. also has "mental retardedness"[2] and is non-verbal. Trial Court Opinion, 12/10/18, at 41.

On October 19, 2017, the Commonwealth filed an information charging Appellant with sexual crimes against I.M. and M.C., and simple assault[3] of A.C. Appellant filed an *omnibus* pre-trial motion seeking, *inter alia*, severance of the charges. Appellant argued that evidence concerning the offenses as to each of the three child victims would be more prejudicial than probative if presented at one trial. After a hearing, the trial court denied the request.

A jury trial commenced April 23, 2018. The trial court detailed the testimony presented by the Commonwealth. *See* Trial Court Opinion, 12/10/18, at 7-49. We summarize the charges, along with the trial evidence *seriatim*.

First, with respect to M.C., the Commonwealth charged Appellant with indecent assault/complainant less than 13. The Commonwealth also charged Appellant with two counts each of endangering the welfare of children

_____

[2] At trial, Mother, through a translator, used the term "mental retardedness." N.T. Trial, 4/24/18, at 150-151. Subsequently, the translator requested a correction in the record to the term "mental retardation." N.T. Trial, 4/25/18, at 2. Neither party insisted on this correction, however. *Id.* at 5. Without further explanation in the record of the children's diagnoses, we, like the trial court, quote the translated term, "mental retardedness." *See* Trial Court Opinion, 12/10/18, at 41.

[3] 18 Pa.C.S.A. § 2701(a)(1).

(EWOC), corruption of minors, and unlawful contact with a minor.[4]  The family's neighbor, Crystal Stevens, testified that on October 8, 2017, M.C., then seven years old, told Stevens "that she had been hit again," and disclosed that "she was being touched in inappropriate places" by Appellant.  N.T. Trial, 4/23/18, at 8, 14.  When Stevens asked M.C. to describe Appellant's actions, M.C. "motioned across her upper body."  *Id.* at 8-9.  Stevens, who was a school district employee and thus "a mandated reporter," emailed M.C.'s school counselor, Deborah Houseknecht, about this conversation.  *Id.* at 10, 17-18.

Counselor Houseknecht read Stevens' email and on October 9, 2017 (the day after Stevens sent the email), spoke with M.C.  N.T. Trial, 4/23/18, at 120, 123.  Counselor Houseknecht testified that M.C. said her mother hit her in the head that morning, and Appellant sometimes hit her in the back with a belt.  *Id.* at 124-125.  Counselor Houseknecht and the school nurse examined M.C., but did not see any indication she had been hit.  *Id.*  Counselor Houseknecht asked M.C. why Appellant hit her with a belt, and M.C. replied "because sometimes he hits me to wake me up when I'm sleeping" and "because he touches me when I'm sleeping."  *Id.* at 127.  When asked where Appellant touched her, M.C. pointed to her breasts, vagina, and buttocks.  *Id.*  M.C. also stated that Appellant touched her over her clothes and under her

---

[4] 18 Pa.C.S.A. §§ 4304(a)(1), 6301(a)(1)(ii), 6318(a)(1).

clothes. *Id.* at 129. M.C. told Counselor Houseknecht that Appellant also inappropriately touched her sister, I.M., and grabbed her brother, A.C., by the neck and lifted him off the floor. *Id.* at 128-129, 131. Counselor Houseknecht made reports to Children, Youth & Families (CYF) regarding the three children. *Id.* at 136.

The next day, October 10, 2017, Chester County Detective Christine Bleiler, assigned to the child abuse unit, conducted a forensic interview of M.C. N.T. Trial, 4/24/18, at 174, 176. Protocol required the detective to first engage in an "open narrative," which is to ask the child "what brings [her] here that day," rather than asking leading questions. *Id.* at 177, 180. During the interview, M.C. chewed on her shirt and was "visibly . . . more nervous" when they discussed "the abuse scenario [sic]." *Id.* at 177. M.C. denied several times that Appellant touched her. *Id.* at 180. At trial, Detective Bleiler testified that she saw M.C. "was struggling and possibly didn't understand why she was there [at the forensic interview]," and, according to protocol, asked M.C. what she told her school counselor. *Id.* at 180. The Commonwealth played a videotape of Detective Bleiler's interview of M.C., and introduced a transcript of the interview. *Id.* at 176, 178. The transcript reveals that in describing how and where Appellant touched her, M.C. also stated that Appellant told her, "Don't tell no one . . . when he does that." Trial Exh. C-34, Interview with M.C., at 26-28.

M.C. was eight years old at the time of trial and testified that once, when

she was sleeping with Mother, Appellant's hand touched the skin and "inside" of her "front private part," which is the part of her body where she "pee[s] out of." N.T. Trial, 4/24/18, at 57, 91-93. Appellant stopped when Mother woke up and told M.C. to go back to her own bed. *Id.* at 92-93.

Mother testified that several months before the CYF investigation, M.C. told her that Appellant "pressured her or touched her" and "point[ed] to her private parts." N.T., 4/24/18, at 153. Mother confronted Appellant, who replied that they were merely playing. *Id.* at 154-155.

With respect to I.M., who has autism, the Commonwealth charged Appellant with two counts of indecent assault/complainant less than 16. At the time of trial, I.M. was 15 years old and attended a "special school." N.T. Trial, 4/24/18, at 4, 149. When asked whether she knew the difference of 10 and 7 (7 subtracted from 10), I.M. stated that she did not know, and although she knew the name of the street where she lived, she could not say her house number. *Id.* at 5, 7.

I.M. testified that on several occasions, Appellant touched her chest over and under her shirt. N.T. Trial, 4/24/18, at 14-15, 44. Appellant also touched I.M. while she was in bed, on her thigh and under her clothes. *Id.* at 18-21. In these instances, I.M. screamed and, variously, yelled for Mother and bit, scratched, and kicked Appellant. *Id.* On one occasion, Appellant hit I.M. in the head. *Id.* at 22. On another occasion, I.M. was in the bathroom wearing just her underwear when Appellant "grabbed" her and touched "the part of

[her] body that [she] use[d] to go pee," over her underwear. *Id.* at 25-26. Another time, I.M. was sitting in the living room when Appellant touched the skin on her "front private part," by moving her underwear. *Id.* at 34, 36, 39. I.M. kicked and bit Appellant. *Id.* at 35. Appellant said "he's going to get the knife off [sic]," but I.M. "ran and locked the door." *Id.* During these incidents, Appellant said something to I.M. in Spanish, but I.M., who does not know Spanish, did not remember what he said. *Id.* at 16, 26, 45.

M.C. also testified that once, when she was in bed, she saw Appellant touch I.M.'s "bottom," while I.M. was sleeping in the nearby bunk bed. N.T. Trial, 4/24/18, at 86. M.C. initially stated Appellant touched I.M. "[o]n top" of her pajamas, but later stated that he touched the "inside" of I.M.'s skin. *Id.* at 87, 103.

The Commonwealth additionally charged Appellant with simple assault of Mother's son, A.C. A.C., who was 13 at the time of trial, does not speak, but uses "signs" to communicate, and he repeatedly sings children's songs. *Id.* at 76 (testimony of M.C.), 150-151 (testimony of Mother). As stated above, M.C. told Counselor Houseknecht that "on numerous occasions," Appellant grabbed A.C. by the neck and lifted him off the floor. *Id.* at 131. M.C. also testified that more than once, when A.C. was singing, she saw Appellant grab A.C. by his neck, choke him, and tell him to stop singing. *Id.* at 95-97. However, after the Commonwealth presented its case in chief, it withdrew the charge of simple assault as to A.C. N.T. Trial, 4/25/18, at 6.

Appellant did not testify or otherwise present a defense.

The jury returned guilty verdicts on all nine charges: one count of indecent assault/complainant less than 13 (M.C.) and two counts each of indecent assault/complainant less than 16 (I.M.), EWC, corruption of minors, and unlawful contact with a minor.

On August 24, 2018, the trial court sentenced Appellant to an aggregate 5 to 10 years of imprisonment,[5] followed by 2 years of probation. The court also ordered Appellant to comply with registration requirements under SORNA.[6]

Appellant did not file a post-sentence motion. He filed this timely appeal on September 21, 2018. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents two issues for our review:

1. Did the Commonwealth fail to produce sufficient evidence to support the guilty verdicts of indecent assault, corruption of minors, endangering the welfare of children and unlawful contact with minors, when the children's testimony was inconsistent with each other and with their various prior statements?

2. Was [Appellant] denied due process by the trial court's denial of his motion to sever the charge of simple assault, allowing the

---

[5] The individual sentences, all to run consecutively, were: (1) 1 to 2 years' imprisonment on two of the indecent assault counts; (2) 2 years' probation on the third indecent assault count; and (3) 6 to 12 months' imprisonment on each remaining count.

[6] Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10–9799.42.

> jury to hear testimony regarding physical abuse of one male child, unrelated to the sexual abuse detailed by the minor girls, especially since the Commonwealth withdrew the simple assault charge prior to closing arguments?

Appellant's Brief at 2.

In this first issue, Appellant argues that the evidence was insufficient to support his convictions because the trial testimony of M.C. and I.M. was inconsistent. Appellant contends that M.C. made different statements to her neighbor Stevens and to Counselor Houseknecht; denied during her interview with Detective Bleiler that Appellant touched her; and initially denied at trial that Appellant touched her, but upon being asked "leading questions," stated that Appellant touched her. Appellant's Brief at 29-30. Appellant further claims that I.M. "gave various responses to the questions of whether she was touched over or under her clothes, near her breast area or near her neck, and whether it happened in the living room or in her mother's bedroom." *Id.* at 31. Appellant asserts that the inconsistencies in the testimony of M.C. and I.M. raised reasonable doubt as to whether he "perpetrated any indecent contact on M.C. or I.M.," and furthermore, "[w]ithout sufficient evidence of indecent contact, the verdicts on corruption of minors and [EWC] are not sustainable." *Id.* at 32. Also, with respect to his convictions of unlawful contact with a minor, Appellant alleges there was insufficient evidence that he said anything to M.C. or I.M. "for the purpose of engaging in sexual offenses, other than by performing the acts [themselves]." *Id.* at 33, 35. Appellant reasons that when M.C. told Detective Bleiler that Appellant told her "Don't

tell no one," there was "no context or time frame mentioned," and furthermore M.C. never testified to this "Don't tell no one" statement at trial. *Id.* at 35. Appellant acknowledges that both M.C. and I.M. testified that he touched their genital and chest areas. Appellant's Brief at 10-12, 16-17, 30. Likewise, with respect to his unlawful contact convictions, Appellant concedes that the Commonwealth presented evidence — in the form of the forensic interview video and transcript — that Appellant directed M.C. to not tell anyone about the touching. *Id.* at 35. Appellant alleges that the victims' trial testimony "presented insufficient evidence to sustain a verdict of guilty." *See id.*

At its essence, Appellant's argument — that M.C.'s and I.M.'s testimony, as well as M.C.'s forensic interview statements, were unbelievable — goes to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000) (a claim that verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict); *Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness's testimony 'goes to the weight of the evidence, not the sufficiency of the evidence.'"); *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) ("[V]ariances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence."); *Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa. Super. 2007) (claim that trial court erred in crediting child victim's trial testimony about indecent assault, over another version of events, goes

to the weight, not sufficiency, of the evidence). Notably, Appellant did not challenge the weight of the evidence before the trial court, and thus he has waived appellate review.[7] **See Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) ("[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607[.]"). Accordingly, we decline to further review Appellant's evidentiary claim.

In his second issue, Appellant asserts that the trial court erred in denying his motion to sever. He argues that M.C.'s testimony that he choked A.C. was more prejudicial than probative, and was irrelevant to his charges of sexual assault of M.C. and I.M. Appellant further claims that because the Commonwealth withdrew the simple assault charge, "the solicitation of this testimony was intended only to disparage" Appellant. Appellant's Brief at 37. We disagree.

We review a trial court's decision to join or sever indictments for abuse of discretion. **Commonwealth v. Brookins**, 10 A.3d 1251, 1255 (Pa. Super. 2010). "The court may order separate trials of offenses . . . or provide other appropriate relief, if it appears that any party may be prejudiced by offenses

_____

[7] Moreover, the trial court correctly noted, and we reiterate, that the jury was free to believe all, part, or none of the evidence, including conflicting evidence, and "that the uncorroborated testimony of a victim, if believed by the trier of fact, is sufficient to convict a defendant." **See** Trial Court Opinion, 12/10/18, at 7, 50, citing **Commonwealth v. Mack**, 850 A.2d 690, 693 (Pa. Super. 2004).

. . . being tried together." Pa.R.Crim.P. 583. "The critical consideration is whether [the] appellant was prejudiced by the trial court's decision. [The a]ppellant bears the burden of establishing such prejudice." **Brookins**, 10 A.3d at 1255 (citation omitted).

> Where the defendant moves to sever offenses not based on the same act or transaction . . . the court must . . . determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

> \* \* \*

> "Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." **See** Pa.R.E. 404(b)(1) . . . . Nevertheless:

> > [E]vidence of other crimes is admissible to demonstrate . . . a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others . . . . Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

**Brookins**, 10 A.3d at 1256 (some citations omitted).

In addition to the trial testimony recounted above, we note the testimony of Counselor Houseknecht, who stated that M.C. told her, "[E]veryone in the house is afraid of [Appellant], he threatens everyone with a belt." N.T. Trial, 4/24/18, at 132. Consistent with the facts of this case and the authority of **Brookins**, the trial court opined:

- 11 -

[I]t is abundantly clear that the charges all flowed from the same events and were intertwined. The three minor victims were living with [Appellant] in the same house and interacted on a daily basis as these crimes were committed over a period of time. The three minor victims were aware of the assaults on each other, as they sometimes occurred either in the presence of the other minors or the minors could hear the assaults of the others. They involved the natural development of the facts of this case and were properly tried together.

Additionally, [Appellant] was not prejudiced by charges not being severed. The evidence was not so cumulative that it would have convicted [Appellant] only by showing his propensity to commit crimes, nor was the jury incapable of separating the evidence. Distinct evidence was presented for the crimes committed against each minor victim and the verdict slip identified each charge and victim separately. While it was unfortunate that the jury heard the evidence of [Appellant's] assault on minor victim A.C., when the Commonwealth decided not to proceed on that simple assault charge, it was not so unduly prejudicial. [Appellant] received the benefit of having that charge dropped and it was not listed on the verdict slip, so the jury was not aware of that particular charge. The testimony regarding those acts completed the story of the case and the interactions of [Appellant] and the victims within the household.

Trial Court Opinion, 12/10/18, at 4. Upon review, we discern no abuse of discretion by the trial court in denying Appellant's motion to sever.

In sum, Appellant's first claim is waived, and his second issue does not merit relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/19